O

JS-6

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9           DISTRICT OF CALIFORNIA
10            WESTERN DIVISION
11
EVELYN V. KNAPP, ETC.,                    )   Case No.:    CV 07-3565 CAS (FMOx)
12                                        )
                    Petitioner           )   ORDER GRANTING DEFENDANTS'
13                                        )   JOINT MOTION FOR SUMMARY
vs.                                       )   JUDGMENT
14                                        )
UNUM LIFE INSURANCE COMPANY               )
15  OF AMERICA; ET AL.                     )
                                          )
16                  Respondent.           )
    _____ )
17

## I.    INTRODUCTION

18        On June 1, 2007, plaintiff, on behalf of herself and all others similarly situated,

19  filed a complaint against defendants Unum Life Insurance Company of America

20  ("Unum") and the CHW Employee Flexible Benefits Plan, Long Term Disability Plan

21  ("the Plan").  The Plan filed an answer on August 6, 2007.  On August 27, 2007, the

22  Court granted in part and denied in part Unum's motion to dismiss.  Unum filed an

23  answer on September 14, 2007.

24        According to plaintiff, she was at all relevant times employed by Catholic

25  Healthcare West ("CHW"), a participant in the Plan.  Compl. ¶ 4.  The Plan is an

26  employee benefit plan within the meaning of the Employee Retirement Income Security

27  Act, 29 U.S.C. § 1132(a)(1)(B) ("ERISA").  Def.'s Statement of Uncontroverted Facts

28

("SUF") 6, 7.  Unum issued a group disability income policy to the Plan.  Id. 11. Plaintiff alleges that she was injured during the course of her employment and became totally disabled under the terms of the Plan.  Thereafter, plaintiff received disability benefits under the Plan.  Compl. ¶ 8.  Plaintiff also received both temporary and permanent disability workers' compensation benefits as a result of her injuries.  Id. ¶ 9.

Plaintiff claims that Unum has improperly offset her workers' compensation permanent disability benefits in calculating the disability benefits due to her under the Plan.  Id. ¶ 10.  Plaintiff sues on behalf of a putative class consisting of "[a]ll California residents who have been or are participants under ERISA plans funded by group disability income policies issued by Unum to plans established by California employers."  Id. ¶ 12.  The class includes a subclass consisting of "[a]ll California residents 1) who have been or are participants under ERISA plans funded by group disability income policies issued by Unum to plans established by California employers and 2) who have had their benefits under those plans reduced by amounts received for workers' compensation permanent disability benefits."  Id.

On behalf of the subclass, plaintiff alleges a claim against the Plan for benefits due and clarification of rights under an ERISA plan, pursuant to 29 U.S.C. § 1132(a)(1)(B).  Plaintiff also alleges, on behalf of the class, a claim for breach of fiduciary duty against Unum, pursuant to 29 U.S.C. § 1132(a)(3), and an injunction compelling Unum to investigate and determine the extent to which plan beneficiaries' workers' compensation permanent disability benefits may properly be offset under the Plan.

Defendants filed the instant motion for summary judgment on April 7, 2008. Plaintiff filed an opposition thereto on May 5, 2008.  Defendants filed a reply on May 19, 2008.  A hearing was held on June 2, 2008.  After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.    FACTUAL BACKGROUND

Plaintiff was a participant in the Plan. SUF 1. Plaintiff tendered her claim for benefits due under the Plan on April 25, 2003. Id. 13. Under the Plan, plaintiff received long-term disability benefits amounting to 60% of her monthly earnings, less certain offsets. Id. 11, 18, 14, 19. Apart from these benefits, in November 2003, plaintiff began to receive workers' compensation permanent disability benefits. Id. 30. Thereafter, Unum offset the permanent disability benefits that she received against the disability benefits due to her under the Plan. Id. 31.

The Long-Term Disability Insurance component of the Plan was funded by Unum's Group Insurance Policy No. 561977001 ("the Policy"). Id. 11. Under the Policy, which Unum administers, participants who are disabled receive monthly disability benefits if they meet certain conditions. Id. 12. These disability benefits are reduced by certain offsets that are set forth in the "Summary Plan Description" ("SPD") and the Policy.

The SPD provides that

> [i]n the event of total disability, the LTD plan pays you a monthly benefit . . . .less any offsets (see 'Other Sources of Benefits' on page 19).

Id. 4.

On the following page, in the "Other Sources of Benefits" section, the SPD provides,

> [i]f you are eligible for group disability benefits from other sources, such as Workers' Compensation, California State Disability Insurance, Social Security, extended illness benefits or CHW retirement Sheltered Annuity [TSA] arrangement), your FlexAbility LTD benefit will be adjusted so that your total monthly income from all sources does not exceed the percentage of pay option you elected.

Id. 5.

3

1
2
3
4

The Policy explains how monthly benefits are calculated in a section entitled "Benefits At a Glance."  An applicant who has selected "Option C" receives a monthly benefit equal to "60% of monthly earnings to a maximum benefit of $15,000 per month."  Id. 51.  Additionally, the Policy states that

5
6

> [y]our payment may be reduced by deductible sources of income and disability earnings.

7

Id.

8
9
10

Under the Policy, "deductible sources of income" include, *inter alia*, the amount that a participant receives or is entitled to receive under "a workers' compensation law," "an occupational disease law," and "any other act or law with similar intent."  Id. 54.

11
12

The Policy confers broad discretion upon Unum to render claims determinations. It provides,

13
14
15
16
17
18
19
20

> [i]n exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan.  Benefits under the Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

21

Id. 49.

22

## III.   LEGAL STANDARD

23
24
25
26
27
28

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

/ / /

/ / /

/ / /

## IV.   DISCUSSION

### A.   Standing

Defendants contend that plaintiff lacks standing to pursue the injunctive relief that she seeks in connection with her breach of fiduciary claim against Unum. Defendants claim that plaintiff is no longer a plan participant and that plaintiff's

1
2
3
4
5
6

benefits were terminated on March 31, 2005.  SUF 40.  Thus, defendants argue, plaintiff's claims arise solely from defendants' alleged failure to properly calculate the offsets on plaintiff's past disability benefits.  Defendants contend that because plaintiff seeks an injunction to reform Unum's process for calculating the extent to which plaintiff's workers' compensation permanent disability benefits should be offset from *future* disability benefits, she lacks standing to pursue this form of injunctive relief.

7
8

This argument lacks merit.  First, contrary to defendants' contention, plaintiff is a participant within the meaning of ERISA.  ERISA defines a "participant" as

9
10
11
12
13
14

> any employee or former employee of an employer, or any
> member or former member of an employee organization, who
> is or may become eligible to receive a benefit of any type
> from an employee benefit plan which covers employees of
> such employer or members of such organization, or whose
> beneficiaries may be eligible to receive any such benefit.

15
16
17
18
19
20

29 U.S.C. § 1002(7).  The Supreme Court in Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 103 (1989), refined this definition, holding that "participant" refers, among other things, to former employees who have a "colorable claim" to vested benefits.  Plaintiff fits within this definition because she seeks benefits due to her under the Plan to the extent that Unum improperly made offsets for her workers' compensation permanent disability benefits.

21
22
23
24
25

Defendants' argument that plaintiff lacks standing because she seeks an injunction that relates only to Unum's future offset determinations misconstrues the nature of plaintiff's requested injunctive relief.  Defendants rely on the following language from the Court's August 27, 2007 Order, denying Unum's motion to dismiss plaintiff's claim for injunctive relief:

26
27
28

> plaintiff's injunction, if granted, would require Unum to
> determine the character of workers' compensation permanent
> disability benefits for each claimant before offsetting them.

6

> This would not result in a present recalculation of plaintiff's
> monthly disability benefits because the determinations as to
> whether workers' compensation permanent disability benefits
> should be offset would occur in the future.

Aug. 27, 2007 Order 8 (Docket 25).

Contrary to defendants' argument, the foregoing language was not intended to prevent plaintiff from seeking injunctive relief in connection with the recalculation of the benefits due to her under the Plan.  Rather, this language was intended to show that plaintiff's requested relief under § 1132(a)(3) is not duplicative of her request for benefits due under § 1132(a)(1)(B).  As stated in the Court's August 27, 2007 Order, the injunctive relief sought by plaintiff is directed at ensuring the integrity of the claims determination process, which is a valuable right under ERISA that is distinct from the question of whether plaintiff is entitled to additional benefits under § 1132(a)(1)(B).  See Rawls v. Unum Life Ins. Co. of Am., 219 F. Supp. 2d 1063, 1066 (C.D. Cal. 2002).  The foregoing language illustrates the point that a properly conducted recalculation of plaintiff's benefits would not necessarily result in the payment of additional disability benefits to plaintiff; the payment of such additional benefits would depend on what Unum's investigation reveals about the composition of her workers' compensation permanent disability benefits.  However, there is no basis for limiting plaintiff's requested injunctive relief to benefits determinations that have yet to be conducted by Unum.  Accordingly, defendants' argument in this regard is unavailing.

Defendants further argue that plaintiff's requested injunctive relief is a "sham" because in her opposition, plaintiff contends that no part of her workers' compensation permanent disability benefits is meant to compensate her for lost wages, such that none of these benefits may be offset.  See Opp'n 12 ("The law in California is clear that worker's compensation permanent disability awards do not constitute wage replacement.").  Defendants contend that if no part of her workers' compensation permanent disability benefits compensated her for lost wages, then there is no reason

for Unum to conduct an investigation to determine the extent to which these benefits may be offset.

This argument is not persuasive.  Because defendants do not agree with plaintiff's position that no portion of her workers' compensation permanent disability benefits may be offset, plaintiff may plead in the alternative that Unum must conduct an investigation and determine the nature of these benefits in order to determine the extent to which they may be offset.  Therefore, it is permissible for plaintiff, on the one hand, to maintain that no part of her workers' compensation permanent disability benefits should be offset as wage replacement and, on the other hand, for her to seek to uphold the integrity of the claims determination process by compelling Unum to investigate the extent to which these benefits may be offset.

**B.      Unum's Offset for Workers' Compensation Permanent Disability Benefits**

**1.      Standard of Review**

Under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the terms of an ERISA plan are generally interpreted *de novo.*  However, where a benefit plan gives an administrator discretionary authority to determine eligibility for benefits or interpret the plan terms, the administrator's eligibility determination is reviewed according to an abuse of discretion -- or "arbitrary and capricious" -- standard.  Peralta v. Hispanic Bus., Inc., 419 F.3d 1064, 1074 n.14 (9th Cir. 2005); Sabatino v. Liberty Life Assur. Co., 286 F. Supp. 2d 1222, 1229 (N.D. Cal. 2003).

On the other hand, Unum's status as both the underwriter of the Policy and the claims administrator gives rise to a structural conflict of interest, which affects the applicable standard of review.  Mitchell v. Metro. Life Ins. Co., 523 F. Supp. 2d 1132, 1143 (C.D. Cal. 2007) (entity that was both the claims administrator and the insurer had an inherent conflict of interest); cf. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965 (9th Cir. 2006) (en banc) ("an insurer that acts as both the plan administrator and the funding source for benefits operates under what may be termed a structural conflict

8

of interest.").

Where, as here, a person's claim to ERISA plan benefits has been denied by an administrator which (1) has been conferred discretion under the terms of the plan and which (2) has a conflict of interest, the applicable standard of review is that set forth in Abatie.  See Saffon v. Wells Fargo & Co. Long Term Disability Plan, 2008 U.S. App. LEXIS 8136, at *7 (9th Cir. 2008) (treating claims administrators in the same manner as plan administrators for the purposes of Abatie).  In Abatie, the court held that, in these circumstances, a court must review the administrator's determination for abuse of discretion, but that this review is "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record."  Id. at 968.  This standard, the court stated, "applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict."  Id.

The court advocated a case-by-case approach to weighing an administrator's conflict of interest as part of its abuse of discretion analysis.  Id.  "A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage.  An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might."  Id.  The court elaborated,

> [t]he level of skepticism with which a court views a conflicted
> administrator's decision may be low if a structural conflict of
> interest is unaccompanied, for example, by any evidence of
> malice, of self-dealing, or of a parsimonious claims-granting
> history.  A court may weigh a conflict more heavily if, for
> example, the administrator provides inconsistent reasons for
> denial, fails adequately to investigate a claim or ask the
> plaintiff for necessary evidence, fails to credit a claimant's

reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

. . .

courts are familiar with the process of weighing a conflict of interest. For example, in a bench trial the court must decide how much weight to give to a witness' testimony in the face of some evidence of bias. What the district court is doing in an ERISA benefits denial case is making something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a particular set of medical and other records.[1]

Id. at 968-69 (citations omitted).

_____

[1] Abatie also set forth rules regarding what materials a court may consider in conducting the foregoing analysis. The court noted the prevailing rule in the Ninth Circuit and elsewhere that, under an abuse of discretion standard of review, a court is limited to considering the materials before the plan administrator. Id. at 970; see Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1110 (9th Cir. 2003). It adopted a different rule for those circumstances in which a court must determine what weight to accord a plan administrator's conflict of interest. In such cases,

[t]he district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise.

Id. at 970.

Saffon, construing Abatie, stated, "when reviewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, we must determine the extent to which the conflict influenced the administrator's decision and discount to that extent the deference we accord the administrator's decision." Saffon, 2008 U.S. App. LEXIS 8136, at *10 (9th Cir. 2008).

### 2. Unum's Construction of the Plan's Offset Provisions

#### a. The Parties' Competing Interpretations of What Workers' Compensation Benefits May Be Offset

The parties agree that Unum offsets disability benefits under the Plan by "deductible sources of income," which include, *inter alia*, benefits that a participant receives or is entitled to receive under a workers' compensation law. Plaintiff first argues that, given the plain meaning of the word "income" and how this word is used in the Plan, "income" refers only to monies paid as wages. Thus, in plaintiff's view, only benefits paid to a participant as wage replacement may be offset. Accordingly, while the Plan provides that Unum will offset a participant's benefits by "income" that he or she receives in the form of workers' compensation, plaintiff contends that this does not permit Unum to offset workers' compensation benefits that are paid for a purpose other than wage replacement.

Next, plaintiff contends that, under California law, workers' compensation permanent disability benefits are not paid as wage replacement. See Livitsanos v. Super. Ct., 2 Cal. 4th 744, 753 (1992) ("'Temporary disability' benefits are a substitute for lost wages during a period of temporary incapacity from working; 'permanent disability' payments are provided for permanent bodily impairment, to indemnify for impaired future earning capacity or decreased ability to compete in an open labor market."). Thus, plaintiff argues that Unum violated the terms of the Plan and abused its discretion by offsetting her workers' compensation permanent disability benefits when calculating the disability benefits due to her under the Plan.

Plaintiff further argues that Unum's interpretation of the Plan as permitting the

11

offset of permanent disability benefits is belied by the fact that Unum does not offset other components of workers' compensation benefits that are not provided as wage replacement.  In particular, plaintiff argues, Unum does not offset for workers' compensation benefits in the form of attorneys' fees, medical benefits, or certain kinds of vocational rehabilitation benefits.  Declaration of Robert S. Gianelli ("Gianelli Decl.") ¶ 2, Ex. 1 [Deposition of Angel Avila 14-18; Unum's Claims Guidelines 68].

Defendants respond that Unum's interpretation of what monies can be offset under the terms of the Plan is reasonable.  Defendants point out that the SPD provides that a participant's "monthly benefit" will be offset by "other sources of benefits."  Defendants argue that the plain meaning of the word "benefit" includes wage payments as well as other types of payments.  See American Heritage Dictionary of the English Language (4th ed. 2005) (defining "benefit" as "[a] payment made or an entitlement available in accordance with a wage agreement, an insurance policy, or a public assistance program.").

Defendants also argue that, under the Policy, Social Security retirement payments, retirement payments from an employer, and judgments or settlements received from a third party are listed as types of "deductible sources of income," even though, according to defendants, these benefits are not forms of wage replacement.  SUF 54.

Defendants also dispute plaintiff's interpretation of "income" as referring only to wage payments.  Arguing for a broader interpretation of this term, they point out that the Policy sets forth several types of "income" that are not deductible, including "income" that a participant receives from 401(k) plans, profit sharing plans, thrift plans, tax sheltered annuities, and stock ownership plans.  Defendants argue that such payments are not made for the purposes of wage replacement, and therefore, "income" does not refer only to wage payments.

### b.  Deference Accorded to Unum's Interpretation

As discussed *supra*, Unum's interpretation of the Plan provisions as permitting

offsets for workers' compensation permanent disability benefits is entitled to deference, except to the extent that plaintiff shows that this interpretation is the product of Unum's structural conflict of interest.  <u>Saffon</u>, 2008 U.S. App. LEXIS 8136, at *10 (9th Cir. 2008).

Plaintiff maintains that this case is similar to the related case of <u>Alloway v. Reliastar Life Ins. Co.</u>, CV 06-4719 CAS (FMOx), in which the Court, in denying the defendant insurance company's motion for summary judgment, held that the plaintiff had set forth sufficient evidence to raise a triable issue as to whether the defendant's denial of benefits was a product of its conflict of interest, such that its claim decision was not entitled to the usual amount of deference.  <u>See</u> <u>Alloway</u>, CV 06-4719 CAS (FMOx), April 28, 2008 Order 12-13 (Docket 72).  There, as here, the defendant insurer claimed that its offset of the plaintiff's workers' compensation permanent disability benefits was based on its reasonable interpretation of the plan as providing for the offset of workers' compensation benefits.  The plaintiff in <u>Alloway</u>, however, adduced evidence showing that, notwithstanding this claimed interpretation of the plan provisions, in practice, the defendant offset workers' compensation benefits only to the extent that they were for wage replacement.  <u>Id.</u> 13.  This evidence gave rise to the inference that the defendant's denial of benefits under the plan may have stemmed from its conflict of interest.[2]  Accordingly, the Court declined to conclude, as a matter of law, that the defendant had not abused its discretion in calculating the plaintiff's benefits. <u>Id.</u>

Unlike in <u>Alloway</u>, plaintiff has set forth no evidence that Unum's practice in

---

[2] In this regard, the Court also considered the evidence that the defendant did not take offsets for other forms of workers' compensation that were not for wage replacement, including attorneys' fees and future medical bills.  The insurer in <u>Alloway</u> did not explain why it believed that workers' compensation permanent disability benefits should be offset, but not these other forms of workers' compensation benefits.  In the instant case, by contrast, and as discussed <i>infra</i>, defendants argue that these forms of workers' compensation benefits were not offset because they were paid to third parties.

calculating disability benefits under the Plan differs from its stated interpretation of the Plan's offset provisions.  Instead, plaintiff directs the Court's attention to findings that Unum has previously engaged in other types of deceptive claims practices, as discussed in Hangarter v. Provident Life and Accident Ins. Co., 373 F.3d 998, 1013-14 (9th Cir. 2004) (affirming award of punitive damages against Unum for deceptive claims practices); Merrick v. Paul Revere Life Ins. Co., 500 F.3d 1007, 1013-14 (9th Cir. 2007) (same); and other unrelated actions; apparently arguing that Unum's past alleged wrongful conduct should cause the Court to accord less than the usual amount of deference to Unum's claims determinations in this action.  See Opp'n 14-16.  However, plaintiff cites no authority for the proposition that an insurer's claims determinations should be subjected to heightened scrutiny on the basis of its wrongful behavior in connection with what are, by all appearances, unrelated claims determinations.  The Court declines to adopt such a position in this case.  See Baldoni v. UnumProvident, 2008 WL 140716, at *5 (D. Or. 2008) (rejecting the plaintiff's argument that Unum's abuses of discretion in unrelated cases undermined Unum's credibility concerning the processing of the plaintiff's claims where Unum pointed to other cases showing that its claims determinations had been proper).

Next, plaintiff makes reference to a purported claims manual provided by Unum in the year 2000, which, according to plaintiff, demonstrates that Unum previously did not offset permanent disability benefits in California.[3]  Plaintiff argues that Unum's

---

[3] Plaintiff asserts that this document may be obtained on the Internet at http://www.corporatecrimefighters.com/unum_claims_manuals.htm.  She relies on the following passage, found in Exhibit 73, on page 280:

> In the past our procedure was not to offset for Permanent Disability Benefits.  Based on a review of court decisions and claim handling in California, we have made the decision to include the PD award as an offset. (Unemployment Insurance Code, Section 262a, as amended in 1993)

(continued...)

claim determination in this case should be subjected to increased scrutiny because it has not explained why it changed its procedure to begin offsetting permanent disability benefits.  However, the document upon which plaintiff relies is improperly authenticated.  Moreover, the fact that Unum changed its procedures regarding the offset of permanent disability benefits at least several years before plaintiff's claims in this litigation arose does not, standing alone, give rise to a concern that this offset determination is the product of Unum's conflict of interest, rather than its good faith efforts to administer the Plan.

Plaintiff also argues that Unum's purportedly unreasonable interpretation of the Plan's offset provisions is itself an indicator of Unum's self-dealing.  Plaintiff criticizes Unum for interpreting the Plan provisions as permitting the offset of workers' compensation permanent disability benefits, on the one hand, while simultaneously acknowledging that it may not offset other forms non-wage replacement workers' compensation benefits -- including, attorneys' fees, medical benefits, and certain vocational rehabilitation benefits -- on the other.  According to plaintiff, this inconsistent interpretation of the Plan's offset provisions demonstrates that Unum had no legitimate basis for reducing her benefits.

Defendants respond that the Policy provides that the offsets are based on the benefits that a participant receives or is entitled to receive.  SUF 54.  Defendants argue that, in keeping with the terms of the Policy, Unum offsets those portions of workers' compensation benefits that are paid to participants -- including permanent disability benefits -- but does not offset those portions that are paid to third parties, including sums paid to attorneys, doctors, and vocational rehabilitation facilities.  The deposition

---

[3](...continued)

> This change is effective immediately on any California claims with a disability date on or after 1/1/94, where the PD has not yet been awarded, and where we have not indicated that it would be handled differently.

testimony of defendants' Rule 30(b)(6) witness in this matter is consistent with this explanation for why Unum offsets certain portions of workers' compensation benefits, but not others.[4]  Gianelli Decl. ¶ 2, Ex. 1 [Deposition of Angel Avila 17-18]. Accordingly, the fact that Unum offsets only certain types of workers' compensation benefits, standing alone, does not give rise to the concern that its stated reasons for denying plaintiff's claim for additional benefits are the product of its structural conflict of interest.

Finally, plaintiff contends that Unum did not adequately inform her of its policy of offsetting permanent disability benefits.  Plaintiff maintains that when she advised of Unum of her position that permanent disability benefits are not "income" within the meaning of the Plan, and therefore may not be offset, Unum "merely quoted the contract language to her," and did not explain why it offset certain workers' compensation benefits, but not others.  Opp'n 18.  Plaintiff argues that Unum's failure to adequately explain its rationale for denying her claim for additional benefits is an abuse of discretion.  She relies on Abatie, 458 F.3d at 974 (providing that an administrator "must provide a plan participant with adequate notice of the reasons for denial,"); Booton v. Lockheed Corp., 110 F.3d 1461, 1463 (9th Cir. 1997) (insurer abused its discretion when it denied the plaintiff's claim without a "rational explanation," and without acknowledging the plaintiff's argument as to why the claim was covered); and Mitchell v. Metro. Life Ins. Co., 523 F. Supp. 2d 1132, 1145-58 (C.D. Cal. 2007).

Defendants respond that the SPD and the Policy adequately informed plaintiff that her monthly benefits would be offset by various other benefits, including workers' compensation benefits.  Defendants also argue that Unum had no reason to explain to plaintiff its rationale for offsetting only certain forms of workers' compensation benefits

---

[4] During his deposition, this witness testified that Unum offset vocational rehabilitation benefits when they were paid directly to the claimant, but not when they were paid to third parties.  Gianelli Decl. ¶ 2, Ex. 1 [Deposition of Angel Avila 17:14-18:15].

because plaintiff never disclosed to Unum that she received the types of workers' compensation benefits that are not offset, such as attorneys' fees or medical benefits. Reply 9 (citing SUF 27-30).

In <u>Booton</u>, the court noted that ERISA regulations call for "a meaningful dialogue between ERISA plan administrators and their beneficiaries," requiring administrators to explain reasons for denial in "reasonably clear language, with specific reference to the plan provisions that form the basis for the denial." <u>Booton</u>, 110 F.3d at 1463; <u>see also</u> 29 C.F.R. § 2560.503-1(g). Moreover, the court observed, "if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it." <u>Booton</u>, 110 F.3d at 1463.

The court then found that the insurer's conduct in handling the plaintiff's claim "did not comply with this common sense standard" because the insurer had failed to provide a "rational explanation" for denying the plaintiff's benefits and had ignored the plaintiff's arguments in favor of her receiving additional benefits. <u>Id.</u> Furthermore, the court found that because the insurer denied the plaintiff's claim for benefits without considering readily available evidence in support of the plaintiff's claim, it made its decision "blindfolded." <u>Id.</u> Having failed to consider important information regarding the merits of plaintiff's claim and having failed to offer a rational reason for its denial of plaintiff's claim, the court held that the insurer's denial of benefits was an abuse of discretion. <u>Id.</u> at 1464.

In <u>Mitchell</u>, the insurer denied the plaintiff's claims appeal based upon a lack of objective evidence that the plaintiff was disabled under the plan. <u>Mitchell</u>, 523 F. Supp. 2d at 1135. The court rejected this rationale for denying the plaintiff's claim and concluded that the insurer had abused its discretion because the plan terms did not contain an objective evidence requirement, and the insurer had not explained the basis for this requirement. <u>Id.</u> at 1146-47. The court also faulted the insurer for applying the objective evidence requirement without informing the plaintiff of the kind of evidence that would satisfy it. <u>Id.</u>

In contrast to these cases, plaintiff has not shown that Unum failed to provide a rational explanation for the reduction of her monthly benefits under the plan. As defendants point out, the SPD and the Policy provide that a participant's monthly benefit may be reduced by, *inter alia*, workers' compensation payments that the participant receives. Thus, Unum's practice of offsetting permanent disability benefits, which are paid to the participant, while not offsetting other forms of workers' compensation benefits that are paid to third parties is consistent with this interpretation. It cannot be said, therefore, that Unum did not adequately inform plaintiff of the basis for its offset determination.

Therefore, unlike in <u>Alloway</u>, plaintiff has not set forth sufficient evidence to raise a material issue of fact regarding the propriety of Unum's offset determination. Furthermore, the Court is unable to conclude that Unum abused its discretion in offsetting plaintiff's permanent disability benefits against her monthly benefits. Unum's interpretation of the Plan finds support in the terms set forth in the SPD and the Policy, and this interpretation is reasonable. <u>See Joas v. Reliance Standard Life Ins. Co.</u>, 2007 WL 4365469, at *8 (S.D.Cal. 2007) ("Where an ERISA plan administrator is granted discretion to interpret insurance policy language and a Plaintiff challenges the administrator's interpretation, the question the Court must ask is not 'whose interpretation of the plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable.") (quoting <u>Canseco v. Constr. Laborers Pension Trust for S. Cal.</u>, 93 F.3d 600, 606 (9th Cir. 1996)).

**C.    Reasonable Expectations Doctrine**

Plaintiff argues in the alternative that Unum's offset of her permanent disability benefits is improper under the reasonable expectations doctrine. The doctrine, which has been applied in this Circuit to the interpretation of ERISA insurance contracts, has been expressed as follows:

> In general, courts will protect the reasonable expectations of
> applicants, insureds, and intended beneficiaries regarding the

18

coverage afforded by insurance carriers even though a careful
examination of the policy provisions indicates that such
expectations are contrary to the expressed intention of the
insurer.

. . . an insurer wishing to avoid liability on a policy purporting
to give general or comprehensive coverage must make
exclusionary clauses conspicuous, plain, and clear, placing
them in such a fashion as to make obvious their relationship to
other policy terms, and must bring such provisions to the
attention of the insured.

Saltarelli v. Bob Baker Group Med. Trust, 35 F.3d 382, 386 (9th Cir. 1994).

Plaintiff relies on Russell v. Bankers Life Co., 46 Cal. App. 3d 405 (1975), in
which the court concluded that a plan term providing for the offset of workers'
compensation benefits was ambiguous as to whether permanent disability benefits
would be offset.  Id. at 416-17.  The court reasoned that because disability policies are

designed to provide a substitute for earnings when, because of
bodily injury or disease, the insured is deprived of the
capacity to earn his living . . . it is . . . the expectation of a
reasonable person that a disability policy (either procured for
his benefit, or one which he has obtained for his benefit, or for
which he has contributed premiums) will provide substitute
income for lost wages.  A reasonable person would not
anticipate that permanent disability benefits under the
Workmen's Compensation Act will be deducted from the
amount of payment under the disability policy.

Id.  Accordingly, the court reversed the lower court's judgment in favor of the insurer.
Id. at 421.

Plaintiff argues that, like in Russell, a reasonable person would not have expected

that permanent disability benefits would be offset against monthly benefits due under the Plan.  In particular, plaintiff maintains that there were no "plain and clear" terms explaining that these benefits would be offset.

This argument is unpersuasive.  First, as defendants point out, plaintiff's reasonable expectations must be based on the plan documents in this case, rather than on the documents before the court in <u>Russell</u>.  Moreover, contrary to plaintiff's contention, <u>Russell</u> is not binding authority on this Court.

A review of the Plan terms pertaining to offsets belies plaintiff's contention that the scope of these offsets were ambiguous.  The SPD provides that monthly benefits under the Plan are offset by certain "benefits," including workers' compensation benefits.  In contrast to her arguments regarding the interpretation of the word "income," plaintiff does not argue that the term "benefits" is limited to payments for wages.  Moreover, the SPD includes no language limiting the types of benefits that are offset to those paid for wage replacement.  Thus, on its face, the SPD informs participants that all workers' compensation benefits -- including permanent disability benefits -- are subject to offset, regardless of whether such benefits constitute wage replacement.

<u>Russell</u> is distinguishable.  In <u>Russell</u>, the court held that under the policy before it, "the only type of workmen's compensation benefits which may be offset are those providing for loss of time from employment."  <u>Russell</u>, 46 Cal. App. 3d at 415. It went on to conclude that, given this language, a participant would not expect for permanent disability benefits to be offset.  <u>Id.</u> at 415-16.  Unlike in <u>Russell</u>, in this case, there is no basis for interpreting the Plan as limiting offsets for workers' compensation only to those benefits paid as wage replacement.  Accordingly, plaintiff could not have reasonably expected that her permanent disability benefits would not be offset.

Reading the SPD and the Policy together, the Plan provides that workers' compensation benefits are subject to offset to the extent that they are received by the participant, rather than third parties.  There is no ambiguity as to the treatment of

workers' compensation permanent disability benefits.  Under the Plan, these benefits are subject to offset.  Therefore, plaintiff's invocation of the reasonable expectations doctrine is unavailing.

**IV.    CONCLUSION**

In accordance with the foregoing, the Court GRANTS defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: June 3, 2008

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE